Nott, Ch. J.,
delivered the opinion of the court:
This action is brought upon seven contracts for the sale in this country of oats, the delivery of the same to be at seven different towns in Cuba.
An anafysis of the contracts shows that the depot quartermaster in New York, the contracting officer, reserved to himself the right to annul the contract in whole or in part. But this right was subject to two conditions: The first condition was that changes must occur and the “ exigencies of the service require smaller quantities than the minimum specified.” That is to say, the quartermaster in New York was not at liberty to annul the contract and go into the market and buy oats from other persons because he could buy at a less price. The second condition was that “ notice of such change will be served upon the contractor by the depot quartermaster, New York City.” This meant that, inasmuch as the oats were procured by the contractor in this country for transportation to Cuba, and inasmuch as the contract required “ each month’s supply to be delivered not later than the 15th of the month ” and “ one month’s supply to be delivered at a time,” notice must be given in writing, and must be given in New York, i. e., in this country, where the oats were procurable. To this term “ notice ” the law would attach the term “reasonable.” But as no such notice was given, it is not incumbent upon the court to define what “ reasonable ” would be.
As the oats were to be delivered in Cuba, at jfiaces distant from the official residence of the officer purchasing, the contracts also provided that the deliveries in the different *229 towns were to be “ in sucli quantities as may be directed by the chief quartermaster of the Department of Cuba.” But this authority of the chief quartermaster of the Department of Cuba was also subject to two provisions: First, that he might call-for an additional quantity of oats “ not exceeding 20 per cent ” of the quantity prescribed in the contract; and, second, that he might diminish the quantity prescribed in the contract not exceeding 20 per cent. Beyond the margin of 20 per cent above the contract quantity and 20 per cent below the contract quantity the chief quartermaster in Cuba was, therefore, without discretion; and the right to diminish the quantity below 20 per cent, or to annul the contract entirely, was reserved exclusively by the depot quartermaster in New York.
u Each month’s supply to be delivered not later than the loth of the month preceding that for which it is intended, one month’s supply to be delivered at a time,” were also provisions of the contract. It is manifest, therefore, that when, on the 20th of March, 1902, the chief quartermaster in Havana notified the contractor that 921,134 pounds of oats would be required for .May delivery at certain posts mentioned in the notice, it behooved the claimant to go into the market and buy oats and make arrangements for shipping them to Cuba, so that they would be ready for delivery by the loth of April. It is equally manifest that for the defendants’ officers to have revoked this notice after the claimant had proceeded to act upon it and to refuse to receive the oats so ordered was a breach of the contract.
In such a case the measure of damages is the amount of money which would put the injured party in precisely the same condition that he would have been in if no breach had been committed. The contractor here would be entitled to recover for the expenses to which he was needlessly put and for the profits which he would have made; but as no expenses have been shown his relief must be limited to the profits which he would have made.
The contract quantity of oats deliverable in May was 2,025,000 pounds; from this might be deducted 20 per cent, which was the deduction the receiving quartermaster was at *230 liberty to make, leaving 1,620,000 pounds which the contractor had the right to deliver and which the defendants were bound to receive in the absence of any action on the part of the depot quartermaster in New York. The quantity of oats which, the receiving quartermaster did order on the 20th of March, 1902, was 921,134 pounds. Deducting this amount from the preceding 1,620,000 pounds leaves 698,866 ■pounds, deliverable in May, but not ordered by the receiving quartermaster in March.
For his profits on this last-named quantity of oats not ordered, the claimant would be entitled to his profits if he had insisted on his right to deliver. But, apparently, he acquiesced in that surplus not being ordered. Fie did not appeal to the depot quartermaster in New York; and in his appeal to the receiving quartermaster of March 31, 1902, all that he asked was that he be paid his profits and losses on the oats ordered on the 20th of March, 1902, and refused on the 29th of March. It also appears, inferentially, that he did not purchase or make arrangements for purchasing this surplus, and, as before stated, acquiesced in a less quantity of oats being called for than the contract entitled him to deliver.
This seems to the court a case where a party might insist on his contract rights, or might find it to his own benefit to waive them; and having waived them, whether beneficially or not, can not recover upon them.
The claimant also seeks to recover for the profits which he would have made on the oats deliverable in June. The ground upon which this is claimed is that the chief quartermaster in Cuba was not authorized to do more than diminish or increase the contract quantity of oats to be delivered above or below 20 per cent of the quantity specified in the contract, and that his action in so doing was ultra vires, the only officer authorized to do so being the depot quartermaster in New York. But it seems to the court that it was incumbent upon the contractor to do something, either to tender the oats or to give to the depot quartermaster in New York an offer or notice which would be equivalent to a tender. The claimant, apparently, did nothing which ivould put the depot quartermaster on his guard and enable him to either accept the oats when tendered or to annul the con *231 •tract because of tlie changes which had occurred in the exigencies of the service.
The court does not suppose that the contractor intentionally concealed the facts from the depot quartermaster. But in a case like this, where responsibility was divided between two public officers who were at two different places, it was incumbent upon the contractor to do nothing and to leave nothing undone which might mislead either officer or leave him in a position where be could not understandingly protect the interests of his principal,' the defendants.
The claimant also seeks to recover for needless expenses to which he was put because some of the oats tendered at different places in Cuba were rejected by boards of officers-appointed by the commanding officers of the different posts where the deliveries were made, and because officers of the Quartermaster’s Department were not members of such boards.
The contract contains two provisions on the subject of inspection: The first is that oats shall be delivered “ subject to an inspection by an agent of the Quartermaster’s Department.” The second is, “ both oats and sacks to be subject to United States Government inspection.”
If the receiving quartermaster refused to receive the oats and refused to give to the contractor the inspection which the contract required, the proper course for him to have pursued was to sell the oats and sue for the difference in the price received and the price prescribed by the contract. He did not do so, but cleaned and put the oats in a condition which made them acceptable to the boards of survey, and they were accepted and paid for. The court is of the opinion that, on these facts, he can not maintain an action for the expenses thereby incurred.
It is proper to say that the evidence to sustain these allegations consists exclusively of the claimant’s own personal testimony. Some of it is of matters of which he could have had no personal knowledge; some of it is less than secondary, being mere statements of written orders, and it is altogether so vague that it is impossible for the court to make a findings of fact which will present the legal questions involved.
*232 Upon the whole case the court is of the opinion that the claimant can recover only for the losses caused by the receiving quartermaster’s letter of March 29, 1902.
The judgment of the court is that the claimant recover $1,598.38.